UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| CARLA D. COMBS, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No.: 4:17-cv-0024-SEB-DML |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security, Administration, | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation on its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Carla D. Combs is not disabled.

## Introduction

Ms. Combs applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging she has been disabled since April 26, 2013. Acting for the Commissioner of the Social Security Administration following a hearing in September 2013, an administrative law judge (ALJ) issued a decision on October 30, 2015, finding that Ms. Combs has not been disabled from her alleged onset date through the date of his decision. The Appeals Council denied review of the ALJ's decision on December 9, 2016, rendering the ALJ's decision for the Commissioner

final.  Ms. Combs timely filed this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Combs argues that the Commissioner's decision must be reversed and remanded because the ALJ did not evaluate a statement from her employer about her job performance and work-related abilities and limitations.  She also maintains that the ALJ's assessment of her subjective complaints was "patently wrong."  The court will first describe the legal framework for analyzing disability claims, the standard of review and the ALJ's findings, and then address Ms. Combs's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (supplemental security income (SSI) benefits).[1]  Ms. Combs is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, work experience, and residual functional

---

[1] Two disability-benefits programs are available under the Social Security Act:  DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, materially identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

capacity, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. §423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the

fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, education, and RFC; if so, she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1560(c)(2).

## **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence, but he cannot ignore an entire line of evidence that undermines his

4

conclusions, and he must provide sufficient detail to allow a reviewing court to trace the path of his reasoning. *See Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012). In addition, the ALJ "must build an accurate and logical bridge from the evidence to his conclusions." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. Combs was 41 years old on the alleged disability onset date and 44 years old at the time of the ALJ's decision. The ALJ found she met the insured status requirements of the Social Security Act through December 31, 2018, and she had not engaged in substantial gainful activity since the alleged onset date of April 26, 2013. At steps two and three, he identified Ms. Combs's severe impairments as fibromyalgia and obesity, but he concluded that no impairment or combination of impairments meets or medically equals the severity of a listed impairment.

In the RFC, the ALJ limited Ms. Combs to medium work as defined in 20 C.F.R. § 404.1567(c), with the restrictions that she can occasionally climb ladders, ropes, or scaffolds and she can frequently kneel, crouch, crawl, and climb ramps and stairs. (R. 21). The ALJ found that Ms. Combs is capable of performing her past relevant work as a secretary. (R. 24). He therefore concluded at step four that she is not disabled under the Social Security Act.

## II. Ms. Combs's Assertions of Error

### A. The Evidence from Ms. Combs's Employer

Ms. Combs first contends that the ALJ erred in failing to evaluate a statement from her employer regarding her job performance and work-related abilities and limitations. The Magistrate Judge agrees.

Social Security Rulings are binding on the SSA, including ALJs. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999). One such ruling, SSR 06-3p, which was in effect at the time of the ALJ's decision but since rescinded, provided that the SSA will consider evidence from "other sources" including "non-medical sources," such as relatives, friends, and employers, because it may inform the determination as to the severity of the claimant's impairment(s) and the effects on her ability to function. SSR 06-3p, 2006 WL 2329939, at &2 (Aug. 9, 2006); *see also* 20 C.F.R. § 404.1513(d) (stating that the SSA will consider nonmedical evidence submitted to it); 20 C.F.R. § 404.1527(f)(1) (providing that consideration will be given to opinions from nonmedical sources). According to this ruling, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p; *see also* 20 C.F.R. § 404.1527(f)(2) (tracking the language of SSR 06-3p and applicable to claims filed on or before March 27, 2017). A new regulation applicable to cases filed on or before March 27, 2017, such as Ms. Combs's, provides that "[d]epending on the particular

facts in a case, … an opinion from … a nonmedical source may outweigh the medical opinion of an acceptable medical source…." 20 C.F.R. § 1527(f)(1).

The ALJ did not evaluate the evidence from Ms. Combs's former employer, Janet St. John, President of St. John Trucking, Inc. Ms. Combs worked as an administrative assistant for St. John Trucking for 15 years. She stopped working in April of 2013 because the employer needed an employee capable of working full-time, and, as both Ms. Combs and Ms. St. John reported, Ms. Combs was unable to continue working full-time because of her health. (R. 48, 231). Ms. Combs testified that over the years, she had missed several days of work because of her health problems and her employer "worked with her" to get through the absences, but things "kept getting worse and worse and worse." (R. 49-50). Likewise, Ms. St. John stated that in 2012, Ms. Combs was able to work only nine full weeks; the majority of the rest of the year, she worked only one to three days per week. (R. 231). Ms. St. John wrote that all of Ms. Combs's work absences "were due to health issues." (*Id.*) Ms. St. John indicated that when Ms. Combs's health was good, she maintained a good work routine, but when it was bad, "there was no work routine." (*Id.*)

Ms. Combs explained that she and her employer reached a mutual agreement that she should no longer work: They both knew Ms. St. John needed someone capable of full-time work—40 hours per week. (R. 49). Ms. St. John agreed. (R. 233). Indeed, there is no question that Ms. Combs was a "[v]ery good employee".

7

(R. 233). According to Ms. St. John, the "[o]nly problem was when [Ms. Combs's] health became a problem for her to be able to work." (*Id.*).

While the ALJ's decision mentions the employer's statement, it does so only in the context of considering whether Ms. Combs's mental impairments are severe. (R. 19-20). Ironically, the ALJ indicates that Ms. Combs's "employer reports no decline in the quality of [Ms. Combs's] work even when her attendance suffered because of physical symptoms." (R. 20). The quality of the work Ms. Combs performed, *when she was able to* work, is not the issue, however. The question is whether Ms. Combs was able to work full-time. And the ALJ fails to explain the weight given to Ms. St. John's opinion that Ms. Combs's absences were because of her health problems, specifically her fibromyalgia. If Ms. Combs is unable to work eight hours a day, for five days a week, or a full-time equivalent, then she is disabled. *See, e.g., Radosevich v. Berryhill*, Case No. 16-C-1119, 2017 WL 4119626, at *9 (E.D. Wis. Sept. 18, 2017) ("And because a person who cannot work 8 hours a day for 5 days a week does not meet the minimal requirement of having an RFC to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis, a finding of disabled was required."); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

The employer's statement is important evidence. The ALJ acknowledged that Ms. Combs's "fatigue may contribute to her inability to engage in heavy exertional activity, but [found] that the evidence fails to establish any significant effect on her ability to maintain a regular work schedule or otherwise perform

8

medium work" with the limitations in the RFC. (R. 23). The employer's statement is evidence that, if accepted, tends to prove that Ms. Combs's fatigue, poor sleep, and other fibromyalgia symptoms significantly affect her ability to sustain work activities. Moreover, because the employer's statement corroborates Ms. Combs's claims, the ALJ should have considered it in assessing Ms. Combs's subjective statements about her symptoms and their limiting effects (her credibility). And, as explained next, the ALJ's assessment of Ms. Combs's subjective statements was fatally flawed.[2]

### B. Credibility Assessment

An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Ms. Combs contends that it is. The credibility determination must discuss specific reasons supported by the evidence and allow for meaningful review. *See id.* "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Pierce v. Colvin,* 739 F.3d 1046, 1051 (7th Cir. 2014)).

The Commissioner concedes the inadequacy of some of the reasons given by the ALJ to support his assessment of Ms. Combs's subjective statements. However, she argues that a remand is not required where the ALJ offers other reasons finding

---

[2] Even if the failure to evaluate the employer's statement by itself did not require a remand, the case would have to be remanded because of the errors in assessing Ms. Combs's statements about the intensity, persistence, and limiting effects of her symptoms.

9

adequate support in the evidence for his assessment. She cites *McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011), and an unpublished Seventh Circuit decision for support. *McKinzey* was decided before *Engstrand*, which is cited above; to the extent the two decisions conflict, *Engstrand* as the more recent case controls. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). Besides, unlike in *McKinzey*, there is no "smoking gun" regarding Ms. Combs's credibility. *See* 641 F.3d at 891. As for the unpublished case cited, unpublished Seventh Circuit decisions are non-binding. *See Zahn v. N. Am. Power & Gas, LLC.*, 815 F.3d 1082, 1087 n.3 (7th Cir. 2016).

The Magistrate Judge concludes that the ALJ's assessment of Ms. Combs's statements about the intensity, persistence, and limiting effects of her symptoms is patently wrong for the following reasons. First and foremost, the ALJ reasoned that Ms. Combs's "alleged physical limitations … are not consistent with the objective medical evidence." (R. 22). He noted that "[s]he has no diagnostic imaging or electrodiagnostic testing documenting objective physical abnormalities related to her chronic pain" (R. 22), although he found this was "not necessarily unusual given the insidious nature of fibromyalgia." (R. 22). There are several problems with this rationale. The symptoms of fibromyalgia "are entirely subjective" and "[t]here are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

The Commissioner argues that Ms. Combs misapprehends what the SSA considers "objective medical evidence" in the context of fibromyalgia and asserts

10

that the ALJ must have been referring to "medical signs," as understood under SSR 12-02p and an applicable regulation, 20 C.F.R. § 404.1528(b). Yet the ALJ's decision gives a reviewing court little reason to think that is what he meant. He does not cite to either the ruling or regulation, and he compounds matters by referring to diagnostic imaging and electrodiagnostic testing, which suggests those types of tests were what he had in mind. In addition, even if the ALJ was referring to such "medical signs," as the Commissioner suggests, the record establishes that Ms. Combs presents with fibromyalgia symptoms such as muscle pain, fatigue and tiredness, which are treated as "signs" under the social security ruling and applicable regulation. *See, e.g.*, SSR 12-02p, 2012 WL 3104869, at *3 n.9 (July 25, 2012). Even if Ms. Combs's complaints of pain, fatigue, or weakness were "few and far between," as the Commissioner suggests, she has complained of such symptoms. Besides, the ALJ did identify fibromyalgia as one of Ms. Combs's severe impairments, and objective medical evidence is required to establish a medically determinable impairment.

The ALJ also supported his analysis of Ms. Combs's subjective statements by describing her fibromyalgia treatment as "very conservative, consisting almost entirely of routine medication refills." (R. 22). But the ALJ did not explain if there is any non-conservative treatment available for fibromyalgia. It seems that he simply assumed that such treatment is available. The ALJ also explained that Ms. Combs reported "good relief of her pain" from Cymbalta, she was "doing well," and her long-term use of Cymbalta showed that "it has continued to be reasonably

11

effective." (R. 22). But it is one thing to see improvement in pain or other symptoms from treatment and another thing to improve to the point that one is capable of performing work. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("[O]ne's medical condition could improve drastically, but [one could] still be incapable of performing light work. The key is not whether one has improved …, but whether they have improved enough to meet the legal criteria of not being classified as disabled."); *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]"). What matters in this case is whether Ms. Combs has improved enough to be able to work full-time.

Other reasons given by the ALJ for discounting Ms. Combs's statements are also unsupported. He noted that she had no recent attempts at physical therapy, pain management, chiropractic manipulation, or other treatments for chronic pain, including strong narcotic medication. (R. 23). Yet before an ALJ can draw negative inferences from the failure to seek treatment, he must "explore[] the claimant's explanations as to the lack of medical care." *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (quotation and citations omitted). The ALJ did not ask Ms. Combs about why she did not pursue such treatments.

The ALJ noted Ms. Combs had not had recurrent emergency room visits for intractable pain. (R. 23). But there is no indication that the lack of emergency room visits adversely affects her statements about her symptoms and limitations. *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th 2013) ("[A] person suffering

continuous pain might seek unscheduled treatment if that pain unpredictably spikes to a level which is intolerable, but otherwise why would an emergency-room visit be sensible? Unless emergency treatment can be expected to result in *relief,* unscheduled treatment in fact makes no sense.")

The ALJ erred by relying on the fact that, other than reflecting positive tender points, Ms. Combs's physical exams have been "completely unremarkable." (R. 23). No one disputes that Ms. Combs's examiners have found multiple tender points. The fact that other exam findings were normal does not detract from the evidence of fibromyalgia. Contrary to the Commissioner's argument that the ALJ was merely reciting evidence, it seems he cited the normal exam findings as a basis for his finding Ms. Combs not entirely credible. (*See* R. 22-23). Furthermore, the ALJ discounted Ms. Combs's claimed limitations on her daily activities because they could not "be objectively verified with any reasonable degree of certainty." (R. 23). This was also error. *See Beardsley*, 758 F.3d at 837 ("Whatever uncertainty may exist around … self-reports is not by itself reason to discount them—otherwise, why ask in the first place?—and the relevant regulations specifically allow ALJs to consider claimants' 'daily activities.'") (quoting 20 C.F.R. §§ 404.1529(e), 416.929(e)). And compounding an earlier error, the ALJ discredited Ms. Combs's complaints because he found it difficult to attribute her claimed limitations in her daily activities to her medical condition because of the "relatively weak medical evidence." (R. 23).

13

On top of these errors, the ALJ seems to have required Ms. Combs to establish that her symptoms, which he found "significant" (R. 22), were "so debilitating as to preclude all gainful employment." (R. 22). That is not the correct disability standard. *See* 42 U.S.C. 423(d)(1)(A) (defining "disability" as the "inability to engage in any substantial gainful activity …"). The ALJ should be aware of the appropriate standard, as the Commissioner submits, but this statement suggests some confusion.

A credibility determination "is a judgment call based on whatever circumstances bear on a witness's credibility." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). The ALJ based his credibility assessment on numerous grounds, but many of them were flawed. Consequently, a reviewing court cannot know whether the ALJ would have reached the same credibility determination absent the errors, so a remand is necessary. *See id.*

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the Court REVERSE and REMAND this action pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

So ORDERED.

Date: 12/6/2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

14

Distribution:

All ECF-registered counsel of record by email through the court's ECF system